OPINION
{¶ 1} Appellant, Albert Myles III, appeals the judgment of the trial court in *Page 2 
favor of Defendant-Appellees, Floyd B. Johnson and others, granting summary judgment. Myles' claims were for defamation and breach of fiduciary duty stemming from the 2002 election for president of the Dayton Branch 3181 of the National Association for the Advancement of Colored People ("NAACP").
 {¶ 2} Myles sets forth seven assignments of error. He claims that the trial court erred in applying res judicata, collateral estoppel, the statute of limitations and the law of fiduciary duty. He also contends that the trial court made determinations of contested facts and that it misapplied the standard of review to the summary judgment motion. Finally, he asserts that the trial court did not properly confer authority on its magistrate and that it erred in considering the report of the magistrate.
 {¶ 3} Because we determine that the trial court properly referred the matter to the magistrate; that there were no material facts that were controverted; and that it properly applied both the law and the standard of review in considering the summary judgment motion, we affirm the judgment appealed from.
 {¶ 4} In the fall of 2002, Myles and Johnson were both candidates for the office of president of the Dayton Branch 3181 of the NAACP ("Branch"). The Branch nominating committee had recommended Myles for the position. During the campaign, on October 29, 2002, the Branch executive committee sent a letter to the current president of the Branch expressing concerns about Myles' fitness for the office of president. This letter was forwarded by the president to the State Conference Committee on Internal Affairs for investigation ("SCIA"), pursuant to the *Page 3 
NAACP constitution. On November 7 and 8, 2002, these concerns became public due to articles published in the Dayton Daily News and posted on its website.
 {¶ 5} On November 8, 2002, Myles filed an internal NAACP complaint against appellees James Gooding, Sybil Edwards McNabb, Miley O. Williamson and Johnson. The Branch election took place in mid-November, and Johnson defeated Myles for president. After the election, Myles filed an amended internal complaint against the same individuals. Both complaints were forwarded to SCIA for investigation pursuant to the NAACP constitution. After an investigation, the SCIA dismissed Myles' complaints, finding the allegations to be frivolous.
 {¶ 6} On November 7, 2003, Myles filed the present action in the Montgomery County Common Pleas Court against Johnson, Gooding, McNabb, Williamson and the Branch, alleging that Johnson, Gooding and McNabb made defamatory statements about him that were part of the Dayton Daily News stories. He subsequently filed an amended complaint on February 19, 2004, adding a claim that the Branch, Region III of the NAACP, and the national office of the NAACP violated a fiduciary duty it had to him to properly investigate and resolve his complaints.
 {¶ 7} In December, 2003 and January, 2004, the defendants filed motions for judgment on the pleadings, Civ.R. 12(C) and 12(B)(6). After Myles filed his amended complaint, the trial court denied these motions. After discovery closed, the defendants filed a summary judgment motion, which was granted by the trial court.
 {¶ 8} Myles has presented seven assignments of error for our review that we will address out of the order presented. *Page 4 
Standard of Review
 {¶ 9} When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools Bd. Of Edn. (1997),122 Ohio App.3d 378, 383, citing Dupler v. Mansfield Journal Co. (1980),64 Ohio St.2d 116, 119-120. Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. Brown v. SciotoCty. Bd. Of Commrs. (1993), 87 Ohio App.3d 704, 711.
 First Assignment of Error {¶ 10} The lower court erred by making findings of law in conflict against prevailing law of Ohio courts, other state and federal courts, and the U.S. Supreme Court as it applies to the well-settled doctrine of res judicata and collateral estoppel.
 {¶ 11} In this assignment of error, Myles argues that since the trial court denied the defendants' 12(C) motions for judgment on the pleadings, the doctrines of res judicata and collateral estoppel require the court to have denied the summary judgment motion. He contends that because a grant of the 12(C) motions would have constituted a final appealable order that he would have been bound by if he had not appealed, that the converse should apply to the defendants. Therefore, he argues that the defendants' failure to appeal the denial of the 12(C) motion should *Page 5 
bar the relitigation of the same issues.
 {¶ 12} Clearly, Myles misapprehends the law on this issue. A judgment overruling a motion for judgment on the pleadings is not a final appealable order, under circumstances as herein. See, for example: HarigCo. v. City of Cincinnati (1938), 61 Ohio App. 314; Harger Trust v.Morrow Cty. Regional Planning Comm., 2004-Ohio-6643. Absent a Civ. R. 54(B) determination by the trial court, a ruling on a 12(C) motion is interlocutory in nature, and the trial court may further address the issues raised therein.
 {¶ 13} Myles' first assignment of error is overruled.
 Fifth Assignment of Error {¶ 14} The lower court otherwise erred as judgment was made in conflict against prevailing law of Ohio courts, the Ohio Legislature, other state and federal courts, and the U.S. Supreme Court as it applies to the law of the statute of limitations as it applies to an action for defamation.
 {¶ 15} In this assignment of error, Myles argues that statutes of limitations should not be strictly applied, that the statute of limitations does not commence running until the subject of the alleged defamatory material discovers the injury, and that any defamation by the defendants did not occur until the report was published in the Dayton Daily News.
 {¶ 16} Upon review of the instant action, we find that Myles' complaint raises a claim of defamation that is subject to the statute of limitations set forth in R.C. 2305.11(A). This statute provides in pertinent part: "[a]n action for libel, slander *Page 6 
must be brought within one year after the cause of action accrued * * *." R.C. 2305.11(A). A cause of action for defamation accrues upon the date of publication of the defamatory matter. Lewis v. Delaware CountyJVSD, 161 Ohio App.3d 71, 2005-Ohio-2550; Reimund v. Brown (Nov. 2, 1995), Franklin App. No. 95APE04-487; Hackney v. Community Journal (Feb. 21, 1995), Clermont App. No. CA94-07-052.
 {¶ 17} Because it is uncontroverted that any allegedly slanderous statements were first published on October 29, 2002 at the latest, more than one year elapsed before the original complaint was filed on November 7, 2003. The October 29, 2002 letter was where the defendants-appellees made the allegedly defamatory statements that were included in the Dayton Daily News articles.
 {¶ 18} With regard to Myles' argument that the trial court should have applied the discovery rule, we find that it is well accepted that the date of publication and not the discovery thereof is the time of accrual of such an action. Lewis, supra; Lyons v. Farmers Ins. Group ofCompanies (1990), 67 Ohio App.3d 448; Palmer v. Westmeyer (1988),48 Ohio App.3d 296; Rainey v. Shaffer (1983), 8 Ohio App.3d 262.
 {¶ 19} Myles' fifth assignment of error is overruled.
 Sixth Assignment of Error {¶ 20} The lower court erred as judgment was made in conflict against the evidence, prevailing law of Ohio courts, other state and federal courts, and the U.S. Supreme Court as it applies to the law of fiduciary duty.
 {¶ 21} In this assignment of error, Myles ignores the fact that the trial court *Page 7 
found that no fiduciary relationship existed between the NAACP and Myles, and he argues that there are issues of fact as to whether the NAACP breached a fiduciary duty.
 {¶ 22} The breach of fiduciary duty alleged by Myles in his amended complaint consisted of the NAACP's alleged failure "to properly investigate and resolve Myles' complaints as required in accordance with the Constitution" of the NAACP. Because Myles neither alleged nor established the existence of an express fiduciary relationship, his claim for breach of fiduciary duty is cognizable only if it is based on the existence of a de facto fiduciary relationship. A de facto fiduciary relationship may arise from a confidential relationship. PrudentialInsurance Co. v. Eslick (S.D. Ohio 1984), 586 F.Supp. 763, 766;Walters v. First Natl. Bank of Newark (1982), 69 Ohio St.2d 677, 679.
 {¶ 23} A de facto fiduciary relationship exists where "* * * one person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic, or merely personal. * * *" Indermill v. UnitedSavings (1982), 5 Ohio App.3d 243, 245. This confidential relationship, however, cannot be unilateral. There must be a mutual understanding that one party has reposed a special confidence in the other. Warren v. PercyWilson Mortgage Finance Corp. (1984), 15 Ohio App.3d 48, 51.
 {¶ 24} In reviewing the complaint and the material submitted by Myles contra the motion for summary judgment on this issue, we find that Myles fails to allege or establish that he reposed any special confidence in the defendants, nor that he believed that they had any special duty to act for his benefit. The evidence clearly *Page 8 
establishes that the NAACP, at the branch, state, regional and national level was a voluntary membership organization to which both Myles and the individual defendants belonged. The evidence is uncontroverted that the organization established a procedure to review and act on complaints filed concerning the operation of the organization, and that the duties set forth in its constitution were generally adhered to in this matter, with the exception that certain time lines were not met.
 {¶ 25} While the failure to adhere to the timelines might support a different cause of action, no fiduciary duty towards Myles can be inferred from the existence of these timelines. And, the trial court was correct in its analysis that the cause of action would nevertheless fail, because it is well accepted that courts have no authority to interfere with the actions of voluntary associations where no property right is involved. And neither will a court interfere with the management of a society unless the officers are acting in excess of their powers, or collusion or fraud is claimed to exist on the part of the officers or a majority of the members. State, ex rel. Ohio H. S.Athletic Assn. v. Judges of the Ct. of Common Pleas (1962),173 Ohio St. 239, 247, citing 5 Ohio Jurisprudence (2d), 440, Section 7.
 {¶ 26} Myles' sixth assignment of error is overruled.
 Third Assignment of Error {¶ 27} The lower court erred by making factual determinations, substituting its judgment for the lawful trier of fact: the jury.
 {¶ 28} In this assignment, Myles argues that the trial court impermissibly *Page 9 
determined a controverted fact: when the defendants spoke to the Dayton Daily News reporter as a basis for the determination of when the statute of limitations commenced to run.
 {¶ 29} As discussed above, the statute of limitations in a defamation action commences to run when the action accrues. R.C. 2305.11 "A cause of action accrues when the right to prosecute it begins." Singh v. ABAPub. American Bar Assoc, 2003-Ohio-2314, at paragraph 23, quotingGuccione v. Hustler Magazine, Inc. (1978), 64 Ohio Misc. 59, at 60.
 {¶ 30} Myles would like the court to find that the date of the publication of the statements in the Dayton Daily News controls the commencement of the statute of limitations. However, because the gravamen of a defamation action is the impact of the false statement on the plaintiff's reputation and not necessarily the plaintiff's knowledge of the statement (see: Morgan v. Hustler Magazine, Inc. (1987),653 F.Supp. 711), the statute of limitations for defamation begins to run at the time words are written or spoken, not when the plaintiff became aware of them. Singh, supra, at paragraph 22, citing Pearl v. Koch
(1894), 5 Ohio Dec. 5; Palmer v. Westmeyer (1988), 48 Ohio App.3d 296. It is uncontroverted that the statements made by the defendants that Myles alleges were defamatory, were contained in the October 29, 2002 letter.
 {¶ 31} The fact that the Dayton Daily News decided to print the allegations of the defendants after they had originally made the statements in the October 29, 2002 letter neither extends nor recommences the running of the statute of limitations. Consistent with the 6th Circuit, U.S. Court of Appeals analysis inFriedler v. Equitable *Page 10 Life Assur. Soc. of the U.S. (6th Cir. 2003), 86 Fed. Appx. 50, 55, we find that Ohio law does not support a republication theory, and that the statute of limitations commences on the earliest date the allegedly defamatory statements are written or stated.
 {¶ 32} Because the fact of publication on October 29, 2002 was uncontroverted, the trial court did not impermissibly engage in determining controverted facts.
 {¶ 33} Myles' third assignment of error is overruled.
 Fourth Assignment of Error {¶ 34} The lower court erred by utilizing an obsolete standard of review in conflict against the current standard of review in Ohio courts as judgment was made in conflict against prevailing law of Ohio courts, other state and federal courts, and the U.S. Supreme Court as it applies to the law of summary judgment.
 {¶ 35} In this assignment of error, Myles argues that the trial court failed to utilize the test contained in Dresher v. Burt,75 Ohio St.3d 280 setting forth a burden-shifting procedure in determining summary judgment motions. In Dresher, the Supreme Court held that a party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the record that support his or her contention that the non-moving party cannot support his or her claims. Only after the moving party meets that test, does the reciprocal burden then shift to the non-movant to affirmatively demonstrate that there is a genuine issue of material fact. *Page 11 
 {¶ 36} While Myles argues otherwise, this standard of review was correctly set forth in the magistrate's decision. And, a review of the defendants' motion for summary judgment clearly establishes that the defendants met this standard of review.
 {¶ 37} The defendants' motion for summary judgment regarding the defamation claim sets forth, inter alia, that it is uncontroverted that the allegedly defamatory statements made by the defendants were published on October 29, 2002 in a letter from the executive board of the Branch to the Branch president and that Myles had repeatedly admitted that fact. Therefore, the defendants claimed that the statute of limitations had expired, as a matter of law, prior to the filing of this suit, and that they are entitled to judgment as a matter of law.
 {¶ 38} Furthermore, the defendants moved for summary judgment on the issue of breach of fiduciary duty, claiming there is no issue of fact as to whether a fiduciary relationship existed between Myles and the defendants. The defendants claimed that Myles had alleged neither a special relationship nor that he placed special confidence or trust in the defendants and that there was no evidence that the defendants were specially obligated to act for the benefit of Myles. Finally, they claim that there is no evidence that the defendants understood that any special confidence or trust was placed in them. Therefore, the defendants claimed that they were entitled to judgment on this claim as a matter of law.
 {¶ 39} Therefore, we find that the trial court properly found that the moving party, the defendants, had met the Dresher test, and that the trial court did not err in applying the standard of review to the motion for summary judgment herein. *Page 12 
 {¶ 40} Myles' fourth assignment of error is overruled.
 Second Assignment of Error {¶ 41} The lower court erred when it conferred authority to an Ohio magistrate and permitted reports which exceeded the legislated limits of an Ohio magistrate.
 Seventh Assignment of Error {¶ 42} The lower court otherwise erred in its requisite review of the magistrate's reports and evidence presented by Appellant.
 {¶ 43} In his second assignment of error, Myles suggests that there is no authority for a trial court to refer a summary judgment motion, pursuant to Civ.R. 56, to a magistrate for consideration. However, Civ. R. 53(C)(1)(a) clearly authorizes a court of record to refer any pretrial motion in any case to a magistrate. The record also establishes that the trial court made a proper order of reference to the magistrate on January 26, 2005. Therefore, the summary judgment issue was properly before the magistrate.
 {¶ 44} In his seventh assignment of error, Myles essentially reargues his prior substantive arguments and suggests that his deposition testimony, which the defendants use substantially, to support their summary judgment motion, should not have been considered by the court pursuant to our decision in Pathan v. Pathan, Montgomery App. No. 20926,2006-Ohio-43.
 {¶ 45} For the reasons set forth in our treatment of the first, fourth, and fifth assignments of error, we reject Myles' contentions that the trial court failed to *Page 13 
properly review the law applicable to the facts presented regarding res judicata, collateral estoppel, and the statute of limitations applicable to a defamation action.
 {¶ 46} With regards to the court's consideration of the deposition testimony of Myles, we find that the trial court did not err in overruling this objection. The trial court observed that while Loc. R. 2.09(IV) was not strictly followed by the defendants, that there was a certification filed with the deposition, and that it would have been prejudicial to have stricken the deposition for a technical violation of the local rule without first allowing the defendants to file a certification consistent with the local rule. Myles was not prejudiced by the non-compliance, and any error in that regard was harmless.
 {¶ 47} In reviewing the Pathan decision cited by Myles, we find that it does not stand for the proposition that depositions not in compliance with Loc. R. 2.09(IV) must be stricken. In that case, the deposition was taken out of state in another proceeding. Therein, we approved the trial court's striking the deposition that was not filed with the Court and had no official certification, in addition to the violation of Loc.R. 2.09(IV). Therefore, that deposition failed to comply with both Civ.R. 56(C) and (E), as well as Loc.R. 2.09(IV).
 {¶ 48} Myles' second and seventh assignments of error are overruled.
 {¶ 49} Having overruled all of Appellants' assignments of error, we affirm the judgment of the trial court.
BROGAN and GRADY, J.J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio) *Page 1